## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

E³ BIOFUELS, LLC,　　　　　　　　　　Case No. 1:12-mc-76
　　　Plaintiff,

　　　　　　　　　　　　　　　　　　Spiegel, J.
　　v.　　　　　　　　　　　　　　　　Litkovitz, M.J.

BIOTHANE CORPORATION and　　　　**ORDER**
PERENNIAL ENERGY, INC.,
　　　Defendants.

Perennial Energy, Inc. (PEI) initiated this action in November 2012 to compel Katzen

International, Inc.'s (Katzen) response to a subpoena issued in the United States District Court

for the Southern District of Ohio relating to a matter pending in the United States District Court

for the District of Nebraska, *E3 Biofuels, LLC v. Biothane, LLC and Perennial Energy, Inc.*, No.

8:11-cv-44 (D. Neb. 2011) (Nebraska Litigation). *See* Doc. 1. The undersigned has worked with

counsel for PEI and Katzen on several occasions to resolve various disputes related to this

subpoena. Currently at issue are: (1) the terms of a proposed protective order governing

documents and testimony to be produced by Katzen in response to PEI's subpoena; and (2)

whether PEI should be required to pay witness fees other than those required by Federal Rule of

Civil Procedure 45 to Phillip Madson, the President of Katzen, for the time he will spend

preparing for and testifying at his deposition by PEI's counsel. These issues have been fully

briefed by the parties and are ripe for review. (Docs. 39, 40).

**I. Background**

　　　The Nebraska Litigation was initiated in February 2011 by E3 Biofuels, LLC (E3)

alleging that PEI and others breached a contract to provide a functional boiler system for an

ethanol plant in Mead, Nebraska, and were negligent in the start-up and integration of the boiler system, resulting in a boiler explosion in February 2007. *See* Doc. 1, Ex. D (Nebraska Litigation First Amended Complaint); Doc. 40, Ex. J (Nebraska Litigation Docket Report). During the discovery phase of the Nebraska Litigation, PEI issued a subpoena from the Southern District of Ohio to Katzen, an Ohio corporation and engineering design firm that licences designs for ethanol plants. *See* Doc. 6 at 6. The subpoena seeks documents related to the Nebraska ethanol plant, including Katzen's engineering drawings and various electronically stored information. (Doc. 1 at 7; Doc. 1, Ex. A).

Katzen objected to PEI's subpoena on multiple grounds. PEI subsequently filed a motion to compel Katzen's response to the subpoena, prompting Katzen to file a motion to quash the subpoena. *See* Docs. 1, 7. On January 24, 2013, the undersigned held a hearing on these motions; counsel for PEI and Katzen were present. (Doc. 17). During this hearing, counsel for the parties agreed to engage in Court-assisted discovery in order to ensure compliance with PEI's subpoena and protection of Katzen's proprietary information. *See* Doc. 18. The Court and counsel for PEI and Katzen have conferred on several occasions in attempts to resolve the outstanding discovery disputes, including the scope of a protective order and methodology for obtaining electronically stored information. *See* Docs. 21, 24, 27, 31.

On May 8, 2013, counsel for PEI informed the Court that it was seeking to file a third-party complaint against Katzen in the Nebraska Litigation which, if permitted, would make Katzen a party in the Nebraska Litigation and effectively moot the discovery issues in the Southern District of Ohio. *See* Doc. 32. Accordingly, Katzen and PEI agreed to stay further discovery in this matter pending a ruling in the Nebraska Litigation. *Id.*

2

On June 19, 2013, PEI renewed its motion to compel Katzen's response to the subpoena

in the Southern District of Ohio and notified the Court of the denial by the Nebraska court of its

motion to file a third-party complaint against Katzen.  (Doc. 33; Doc. 40, Ex. J at PAGEID 1071-

1081).  *See also E3 Biofuels, LLC v. Biothane, LLC*, No. 8:11-cv-44, 2013 WL 3337315 (D. Neb.

July 2, 2013).  On July 3, 2013, the undersigned held a telephonic discovery conference with

counsel for PEI and Katzen to address PEI's renewed motion to compel and to clarify the

remaining discovery issues. Following the conference, Katzen's renewed motion to compel was

denied as moot and counsel were instructed to file briefs outlining their respective positions on

the terms and scope of a proposed protective order as well as their positions on whether Katzen's

Rule 30(b)(6) witness is entitled to fees in excess of those required by Fed. R. Civ. P. 45.  *Id.*

These issues are now ripe for ruling.

**II. Standard of Law**

Federal Rule of Civil Procedure 26 provides that "[t]he court may, for good cause, issue

an order to protect a party or person from annoyance, embarrassment, oppression, or undue

burden or expense."  Fed. R. Civ. P. 26(c).  Under the express terms of Rule 26(c), a non-party

from whom discovery is sought may obtain a protective order.  *See, e.g., High Point SARL v.

Sprint Nextel Corp.,* 280 F.R.D. 586, 592 (D. Kan. 2012) ("objecting non-parties have a

legitimate interest in obtaining a protective order to protect their confidential commercial

documents from disclosure") (citing *In re Northshore Univ. Healthsystem*, 254 F.R.D. 338, 342-

43 (N.D. Ill. 2008)).  The entry of a protective order rests with the sound discretion of the Court.

*Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 227 (6th Cir. 1996).  Nevertheless, the

Court is mindful that its discretion to issue protective orders is "limited by the careful dictates of

3

[Rule] 26 and 'is circumscribed by a long-established legal tradition' which values public access to court proceedings." *Id.* (citing *Brown & Williamson Tobacco Corp. v. Fed. Trad Comm'n.*, 710 F.2d 1165, 1177 (6th Cir. 1983)).

## III. Discussion

### A. Protective Order

A protective order is designed to protect and prevent public disclosure of confidential and sensitive business information, like that potentially at issue here. When PEI served the subpoena on Katzen in this matter, it also provided Katzen with a copy of the blanket protective order entered in the underlying Nebraska Litigation. PEI asserted this blanket protective order is sufficient to protect Katzen's interests in this matter. Katzen disagreed and drafted its own Proposed Protective Order (the "PPO"). (Doc. 40, Exh. C). PEI has commented on and made its own revisions to the PPO and Katzen has responded. *See* Doc. 40, Exh. E.

The Court determines that Katzen, as a non-party to the Nebraska Litigation, is entitled to additional and specific protections over those set forth in the Nebraska blanket protective order. The Court will address the parties' dispute in the same sequence as the PPO's numbered paragraphs. Having reviewed the parties briefs and attachments thereto, the Court rules as follows:

### Paragraph 1.a. "Action"

The Court adopts the definition of "Action" set forth in the PPO. The definition is clear and unambiguous and PEI's additional verbiage of what "Action" does *not* include is unnecessary.

### Paragraphs 1.b., 4, and 5: "Confidential Material" and "Highly Confidential Material"

4

The resolution of the definition of "Confidential Material" as used in Paragraph 1.b. depends on the resolution of Paragraphs 4 and 5 of the PPO, which provide for the designation of "Confidential" and "Highly Confidential" material respectively.

PEI objects to Katzen's proposal to designate "any other sort of confidential information, including but not limited to financial, business, and technical information concerning Katzen or its business or those with whom it has conducted business or from whom it has obtained information." PEI contends this provision permits Katzen to designate material as confidential regardless of whether it is actually entitled to any type of trade secret protection. PEI also objects to Katzen's methodology for designating material as "Highly Confidential," contending that the provisions for defining material as "Confidential" versus "Highly Confidential" as set forth in the PPO contain no discernable difference. (Doc. 39 at 6).

Katzen asserts that as an engineering design firm, the core value of its business lies in its confidential designs, its engineers' ability to create new designs, and the advice it gives to customers regarding those designs. (Doc. 40 at 9). As such, Katzen argues its ability to designate certain information as "Highly Confidential" is crucial to the protection of its viability as a business.

This Court has routinely approved proposed protective orders seeking to protect both "confidential" and "highly confidential/attorney eyes only" material when, in addition to trade secret or other confidential research, development, or commercial information, particularly sensitive information of a similar nature may be disclosed through discovery and would cause competitive harm if publicly revealed. Indeed, this Court has recognized that particular cases, such as patent lawsuits, routinely require protective orders designating material "Confidential"

5

and "Highly Confidential – Attorney Eyes Only" to protect the interests of the litigants. *See* General Order No. 10-3 (S.D. Ohio April 19, 2010), adopting Local Patent Rules and Default Protective Order. In this case, the designation of both "Confidential" and "Highly Confidential – Attorneys' Eyes Only" material is warranted given the proprietary nature of the material to be disclosed by Katzen. However, the Court agrees with PEI that Katzen's methodology for distinguishing between "Confidential" and "Highly Confidential – Attorneys' Eyes Only" is unclear. The undersigned believes that designations similar to those used in the Default Protective Order for patent law cases will provide a clearer methodology for the designations in this case:

> 4. Katzen may designate as "CONFIDENTIAL" any information, document, or thing that Katzen reasonably and in good faith believes to contain confidential information within the meaning of Fed. R. Civ. P. 26(c)(1)(g)[1] used by it in, or pertaining to, its business and that is not generally known, and which that party would not normally reveal to third parties or, if disclosed, would require such third parties to maintain in confidence.

> 5. Katzen may designate as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" such materials as Katzen reasonably and in good faith believes to contain particularly sensitive technical information relating to research for and production of engineering designs or drawings; technical, business, and research information regarding future engineering designs or drawings; non-public and highly sensitive financial information; marketing and sales information, such as marketing plans and forecasts, customer lists, pricing data, cost data, customer orders, and customer quotations; and such other documents, information, or materials that relate to other proprietary information that Katzen reasonably believes is of such nature and character that disclosure of such information would be harmful to Katzen.

Given these designations of "Confidential" and "Highly Confidential – Attorneys' Eyes Only," Paragraph 1.b. of the PPO which states that "'Confidential Material' means Discovery Material

---

[1]Fed. R. Civ. P. 26(c)(1)(g) provides that the Court may, for good cause shown, issue a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."

designated as 'Confidential' or as 'Highly Confidential - Attorneys' Eyes Only' by non-party

KATZEN International, Inc. ('KATZEN')" is adopted.

**Paragraph 1.c. "Designating Person"**

PEI objects to the designation of Katzen as a "non-party," arguing that Katzen is a "party"

in the action in the Southern District of Ohio and that PEI believes Katzen has an interest in the

Nebraska Litigation. PEI's objection is unfounded. The only reason PEI and Katzen are in

litigation in the Southern District of Ohio is because PEI seeks information in the possession of

Katzen that PEI believes is relevant to the Nebraska Litigation. Katzen is not and will not be a

party to the Nebraska Litigation, as that court has recently determined. *See E3 Biofuels, LLC v.*

*Biothane, LLC*, No. 8:11-cv-44, 2013 WL 3337315 (D. Neb. July 2, 2013). The reference to

"non-party Katzen" in the PPO is accurate and acceptable.

**Paragraph 1.d. "Discovering Counsel"**

The PPO defines "Discovering Counsel" as "counsel for the Discovering Party, Perennial

Energy, Inc. ("Perennial"), in this Action." PEI objects to inclusion of the phrase "in this

Action" because it allegedly creates an ambiguity regarding the lawsuit in which the material has

been obtained and the lawsuits in which the material can be used. To the extent there may be an

issue regarding whether material obtained from Katzen as a result of discovery in the Southern

District of Ohio may be used in other cases, that issue is addressed below. Otherwise, the

identification of PEI as the "Discovering Counsel" in the PPO is clear and unambiguous. The

existing definition of "Discovering Counsel" in the PPO is adopted.

**1.e. "Discovering Party"**

The PPO defines "Discovering Party" as "Perennial, to whom Discovery Material is

being provided, produced, or made available for inspection by KATZEN in this Action." PEI seeks to add the phrase "and copying" after the term "for inspection" to clarify that PEI is authorized to copy materials produced by Katzen. The Court agrees that this is an appropriate clarifying term and will add it to the final protective order. However, the Court disagrees with PEI's concern that the phrase "*in* this Action" is ambiguous and may imply that Katzen materials produced by others are subject to this protective order. Katzen agrees that the PPO does not apply to materials produced by persons who are not a party to the final protective order. The final order will state: "'Discovering Party' means Perennial, to whom Discovery Material is being provided, produced, or made available for inspection or copying by KATZEN in this Action."

### Paragraph 1.f. "Discovery Material"

Similar to the preceding section, the Court will add the term "and copying" to clarify that PEI is permitted to copy the Katzen materials produced by Katzen in this action. The remainder of the language proposed by Katzen, which includes any material that may have already been produced by Katzen, is appropriate. The final order will state: "'Discovery Material' means any document or tangible thing or part of a document, testimony, or information in any form or medium whatsoever, including, without limitation, any written, printed, or electronic matter provided, produced, or made available for inspection and copying by KATZEN before or after the date of this Protective Order."

### Paragraph 1.g. "Party"

As discussed above, PEI's objection to the designation of Katzen as a "non-party" is unfounded. The Court adopts Paragraph 1.g. as written.

**Paragraph 1.h. "Person"**

The parties have agreed to capitalize the term "Party" as used in this section:

"'Person' means any individual, corporation, partnership, unincorporated association,

governmental agency, or other business or governmental entity, whether a Party or not."

**Paragraph 1.i. "Producing Person"**

The parties have agreed on PEI's proposed revision to add the term "as a result of" in

place of "in": "'Producing Person' means KATZEN, who provides, produces, or makes

available for inspection Discovery Material as a result of this Action."

**Paragraph 1.j. "Trade Secrets"**

The parties have agreed to PEI's proposed language.  The final order will state:

"'Trade Secrets' shall be given the same meaning the term would be given under Federal Rule of

Civil Procedure 26(c) and Ohio law."

**Paragraph 2: what the protective order governs**

PEI objects to Paragraph 2 of the PPO as written, arguing that any language beyond the

term "Discovery Material" as defined in the PPO may be misinterpreted to cover materials not

entitled to protection under the Civil Rules and regardless of whether the documentation or

information was produced as a result of this Action.  Katzen believes the term "Action" defines

the Cincinnati action clearly and the proposed language is clear.

The Court finds that PEI's proposed language appropriately clarifies that any Discovery

Material produced in the Cincinnati Action is covered by the protective order, while documents

or information not produced by Katzen as a result of the Cincinnati Action are not covered by the

protective order.[2] The Court adopts PEI's proposed language: "This Protective Order shall govern all Discovery Material provided or produced by Katzen as a result of this Action."

**Paragraph 3: use of Discovery Materials**

Paragraph 3 of the PPO states:

All Discovery Materials received from KATZEN in this Action shall be used solely by Perennial and solely for the purpose of the prosecution or defense of the case pending in Nebraska captioned *E3 Biofuels, LLC v. Biothane, LLC, et al.*, United States District Court for the District of Nebraska, Case No. 8:11-CV-00044, and not for any business or other purpose. All Discovery Material designated by KATZEN as Confidential Material in this Action or otherwise deemed confidential pursuant to this Protective Order shall not be disclosed by Perennial or its legal counsel to any Person except as provided herein.

PEI objects to the provisions limiting the use of Discovery Materials "solely by Perennial" and "solely for" use in the Nebraska Litigation (*E3 Biofuels, LLC v. Biothane, LLC, et al.*, No. 8:11-CV-00044). PEI argues that Paragraph 3 would prohibit it from sharing material produced by Katzen with Biothane Corporation, which is also a defendant in the Nebraska Litigation and with whom PEI has a joint defense agreement under which Biothane is paying for a portion of the costs of discovering the Katzen materials. PEI also argues that it has joint defense agreements with other entities sued by E3 in actions similar to the Nebraska Litigation and that it should be permitted to use the Katzen Discovery Materials in these actions and any future action against Katzen for contribution and indemnity.

In response, Katzen objects to use of the Discovery Materials in any other cases without its further agreement or Order of this Court. Katzen states that if there is a need to use any of the Discovery Materials in other litigation, the matter can be resolved by agreement, by Order of this

---

[2]Whether Katzen materials PEI has acquired from other sources is protected by a separate Katzen confidentiality agreement is not the subject of this protective order or an issue before this Court.

Court, or by some other procedure related to the litigation. Katzen asserts it needs the ability to control the dissemination of its most proprietary information beyond the specified case in Nebraska. Katzen does not address PEI's concern with sharing the Discovery Materials with Biothane in the Nebraska Litigation.

The Court determines that the Discovery Materials may only be used in the Nebraska Litigation. As a non-party, Katzen is entitled to the protection of this Court in disclosing its proprietary information to PEI. To permit PEI and others to use Katzen's Discovery Material in other actions via the instant protective order would be premature. There has been  no demonstration by PEI that the protected discovery is relevant to any collateral proceeding and that Katzen's proprietary interests the protective order seeks to safeguard are outweighed by the use of the Discovery Materials in another litigation. Katzen may very well decide to share the Discovery Material in other cases, for financial or other reasons. But at this juncture, the Court declines to permit such disclosures in the first instance via the protective order in this action.

Katzen has not specifically objected to PEI's sharing of the Discovery Material with Biothane in accordance with their joint defense agreement. In view of the joint defense agreement, PEI should be permitted to share the Discovery Materials with Biothane solely in the Nebraska Litigation and in accordance with the following provision, which will be incorporated into Paragraph 11(h) of the final protective order governing to whom disclosure is permitted:

> Counsel for Biothane with whom the Discovering Party has entered into a written Joint Defense Agreement to defend or prosecute in the Nebraska action and Biothane's officers or employees charged with the responsibility for making business decisions dealing directly with the case in Nebraska or who are directly assisting Biothane's outside counsel in preparation for proceedings in the case in Nebraska, provided that any such individuals have read this Protective Order and signed an Affidavit of Compliance in the form attached as Exhibit A, and submitted to the jurisdiction of the Court in this Action in Cincinnati.

11

**Paragraph 6**

  The Court adopts Paragraph 6 of the PPO as consistent with the ruling on the

designations of "Confidential" and "Highly Confidential-Attorneys' Eyes Only" set forth in

Paragraphs 1.b., 4, and 5 above:

> Discovery Materials designated "Confidential" pursuant to paragraph 4 or "Highly
> Confidential - Attorneys' Eyes Only" pursuant to paragraph 5 of this Protective Order
> are subject to the provisions of this Protective Order, shall be held strictly
> confidential, and shall be protected, used, handled, and disposed of in accordance
> with the provisions of this Protective Order.

**Paragraph 7: methods for designating Discovery Material as Confidential Material**

  The Court adopts Paragraph 7.a. of the PPO as consistent with the ruling on the

designations of "Confidential" and "Highly Confidential-Attorneys' Eyes Only" set forth in

Paragraphs 1.b., 4, and 5 above:

> By marking any documentary Discovery Material as "Confidential" or "Highly
> Confidential - Attorneys' Eyes Only" prior to its production.  Such Confidential
> Material shall be marked by KATZEN with the legend "CONFIDENTIAL" or
> "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY."   In cases where
> Discovery Material to be produced is in a form other than paper, including, without
> limitation, audiotape, videotape, computer tape, computer card, computer disc,
> compact disc, microfilm or microfiche, KATZEN shall affix to the Discovery
> Material itself or to its container a stamp, sticker, or other clear designation with the
> legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL ATTORNEYS' EYES
> ONLY."   All such information contained therein shall constitute Confidential
> Material.

> There is no dispute over Paragraph 7.b.

  Paragraph 7.c. permits designating Confidential Material "[b]y stating prior to the

inspection of documents, things, or premises that Confidential Material will be disclosed by the

inspection, and is subject to the Protective Order." PEI objects to this provision, asserting that to

allow Katzen to designate material as Confidential without creating any record of the designation

would lead to confusion. The Court agrees and eliminates Paragraph 7.c. from the final protective order.

Paragraph 7.d. of the PPO governs the designation of Confidential Materials during deposition testimony:

> By stating orally on the record during the course of a deposition upon oral examination pursuant to subpoena under Fed. R. Civ. P. 45, or pursuant to agreement, that any portion of the deposition testimony is Confidential and that the indicated portion of the transcript is to be marked as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," as the case may be.

PEI objects to this provision, asserting that Katzen will be permitted to claim protection for deposition testimony without any further question or review. PEI seeks a provision whereby Katzen is required to review deposition testimony within thirty days to further and more specifically identify the testimony subject to protection.

As the Court understands PEI's argument, the concern is with Katzen "over-designating" portions of deposition testimony as Confidential and inhibiting PEI's use of such testimony in the Nebraska Litigation. The provision set forth in the PPO for designation of deposition testimony is standard and often appears in similar protective orders approved by this Court. *See* Local Patent Rules and Default Protective Order. Nevertheless, the Court shall add the following provision to Paragraph 7.d. which will permit Katzen to refine or withdraw previously designated portions of deposition testimony as it sees fit or to newly designate portions of deposition testimony as Confidential:

> or by notifying counsel for the Discovering Party in writing within thirty (30) days after receipt by counsel for the deponent or witness the portions of such deposition to be marked as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY."

PEI also objects to Paragraph 7.e. as repetitive of the "clawback"/inadvertent disclosure

13

provision contained in Paragraph 20 of the PPO.  The Court disagrees and adopts Paragraph 7.e. as written.

**Paragraph 8**

PEI objects to the designation of summaries, digests, analyses, and comments on the Confidential Material identified in Paragraph 7 as "Confidential" stating that it would permit Katzen to designate summaries not authored or produced by Katzen as "Confidential Material." Katzen states that any summaries, analyses, etc. would have been made under the terms of the confidentiality agreement Katzen requires of all persons to whom Katzen provides its confidential information, and as such should be treated as confidential in this matter.

The summaries, digests, analyses, and comments on the Confidential Material identified in Paragraph 7 should be treated as confidential to the extent they contain or incorporate Katzen's confidential information.  Any disputes over this material may be raised with the Court in accordance with Paragraph 17 of the final protective order.

**Paragraph 9: modification of designation procedures**

There is no dispute about the substance of Paragraph 9 of the PPO, but merely its placement within the PPO.  The Court shall retain this provision as Paragraph 9 of the final protective order.

**Paragraphs 10 and 11**

These paragraphs govern access to and use of the Confidential Material:

10.  All Confidential Material shall be kept secure by the Discovering Party and access to Confidential Material shall be limited to Perennial and Persons authorized pursuant to this Protective Order.

11.  Except with the prior written consent of KATZEN, Discovery Material designated as Confidential Material and information derived therefrom, other than

14

material designated as "Highly Confidential-Attorneys' Eyes Only," may be disclosed only to:

a. this Court in Cincinnati, after complying with the terms of Paragraph 16 below, if applicable;

b. the Discovering Party's outside counsel of record (including support staff as reasonably necessary);

c. the individual Discovering Party's officers or employees charged with the responsibility for making business decisions dealing directly with the case in Nebraska or who are directly assisting the Discovering Party's outside counsel in preparation for proceedings in the case in Nebraska, provided that any such individuals have read this Protective Order and signed an Affidavit of Compliance in the form attached as Exhibit A, and submitted to the jurisdiction of the Court in this Action in Cincinnati;

d. outside experts and outside consultants who are not regular employees of the Discovering Party and who are retained by the Discovering Party or its counsel, such as independent experts, accountants, statisticians, economists, and other consultants, whose advice and consultation are being or will be used by such Party or its counsel in connection with the case in Nebraska; provided, however, that (i) before access is given, the consultant or expert has completed the Affidavit of Compliance in the form attached as Exhibit A, such expert has been identified to KATZEN in writing at least 14 days prior to any disclosure of information, and KATZEN has not objected to the disclosure. If KATZEN objects, no disclosure shall be made without further order of this Court in Cincinnati;

e. the Discovering Party's insurers, including their counsel, who have agreed to provide coverage with respect to the defense of claims in the case in Nebraska, and have first signed the Affidavit of Compliance in the form attached as Exhibit A;

f. paralegals, stenographic, video graphic, clerical employees, and translators associated with the individuals enumerated in (a) - (e) above, but only as part of a disclosure to said individuals in accordance with this Protective Order and after they have signed the Affidavit of Compliance in the form attached as Exhibit A; and,

g. such other individuals as KATZEN and the Discovering Party may mutually authorize in writing.

PEI objects to Paragraphs 10 and 11, arguing they would unduly limit PEI's ability to use

Confidential Material to prepare the defense of this case because the PPO as written would not

allow: (a) Confidential Material to be presented to the court overseeing the underlying action pending before the District of Nebraska; (b) Confidential Material to be presented to the courts overseeing other actions that involve the construction of the Solid Waste Management and Ethanol Production Facility from 2005 to 2007; (c) PEI to use Confidential Material to question witnesses such as the project's general contractor or even Katzen representatives at deposition; (d) Confidential Material to be presented to a mediator; and (e) PEI to disclose the Confidential Material to Biothane with whom it has a joint defense agreement, pursuant to which Biothane is paying a portion of the costs associated with the Katzen discovery. PEI also objects to the requirement under Paragraph 11.d., which mandates PEI disclose the identity of its experts to Katzen prior to providing the experts with Confidential Material. PEI argues that this provision requires it to disclose its confidential trial strategy to Katzen, which has a close relationship to E3, the plaintiff in the Nebraska action.[3]

Katzen asserts that without the protections set forth in the PPO, its confidential information would be disclosed to countless unknown persons in the Nebraska Litigation and in other litigation without notice to Katzen to enable Katzen to protect itself and prevent disclosure. Katzen states that if PEI needs to use documents outside of the parameters of the PPO, the parties may attempt an agreement or submit the matter to this Court for resolution.

As discussed above, the Discovery Material obtained in this Action may be used only in the underlying Nebraska Litigation for which the subpoena to Katzen was issued. Therefore, Paragraph 11's limitation of the Discovery Material to the Nebraska Litigation is warranted. By

---

[3]Katzen has provided expert opinions on behalf of the plaintiff, E3, in *E3 Biofuels-Mead, LLC, et. al. v. Zurich American Insurance Company*, Case No. 08-2674 (D. Kan.). (Doc. 39, Exhs. 4 and 5).

the same token, Paragraph 11 of the PPO in its current form prohibits disclosure of the Katzen

Discovery Material to the Nebraska court, Biothane, and any potential witnesses in that action, a

result clearly not contemplated by Rule 45 subpoenas or by even Katzen. *See* Doc. 40, Exh. 3,

PPO at ¶ 25. To the extent Katzen's PPO prohibits dissemination of the Discovery Material to

the above-named entities, it is overly restrictive. The Court determines that the following

modified provisions to Paragraph 11 of the final protective order will be sufficient to protect

Katzen's proprietary and confidential information. Accordingly, the Court modifies Paragraph

11 to permit disclosure to:

> (h) Counsel for Biothane with whom the Discovering Party has entered into a written Joint Defense Agreement to defend or prosecute in the Nebraska action and Biothane's officers or employees charged with the responsibility for making business decisions dealing directly with the case in Nebraska or who are directly assisting Biothane's outside counsel in preparation for proceedings in the case in Nebraska, provided that any such individuals have read this Protective Order and signed an Affidavit of Compliance in the form attached as Exhibit A, and submitted to the jurisdiction of the Court in this Action in Cincinnati;

> (i) actual or potential deponents or witnesses in the Nebraska action, and their counsel, during the course of, or to the extent necessary in preparation for, deposition or hearing testimony in the Nebraska action, or to the extent necessary to determine whether they are proper deponents or witnesses in the Nebraska action, provided that any such individuals have read this Protective Order and signed an Affidavit of Compliance in the form attached as Exhibit A, and submitted to the jurisdiction of the Court in this Action in Cincinnati;

> (j) the Nebraska court and its personnel in that action; and

> (k) any mediator retained to mediate and/or settle the claims in the Nebraska lawsuit.

In terms of the provision requiring PEI to notify Katzen prior to sharing Confidential

Material with experts and other consultants under Paragraph 11.d., Katzen, as a non-party, is

entitled to such notice to protect its interest in the confidentiality of the materials. For example,

if PEI were to retain an expert or consultant from a Katzen competitor, Katzen would be unable

to object to the disclosure of its Confidential Materials and protect its proprietary interests unless it has notice of the identity of that individual. Indeed, PEI and Katzen have recognized that the information Katzen will be producing is highly confidential; it is the very reason that they have attempted to negotiate a protective order in the first instance. Nonetheless, given the potential for an unwarranted intrusion into PEI's litigation strategy by the premature disclosure of its experts or consultants to Katzen, the Court shall order that Katzen agree to not disclose information regarding PEI's experts and consultants to anyone, including E3. Paragraph 11.d. shall include the provision that "Katzen shall not disclose information regarding the identity of any such experts or consultants to anyone, including E3."

Paragraph 12: disclosure of "Highly Confidential-Attorneys' Eyes Only" material

PEI objects to any "Highly Confidential-Attorneys' Eyes Only" designation, asserting that the protections afforded to Confidential Material are sufficient to protect Katzen's highly confidential material. For the reasons set forth above with regard to Paragraphs 1.b., 4, and 5, the Court adopts Paragraph 12 of the PPO as consistent with the ruling on the designations of material as Confidential and Highly Confidential-Attorneys' Eyes Only. However, to be consistent with the ruling on Paragraph 11, Paragraph 12.c. shall include the provision that "Katzen shall not disclose information regarding the identity of any such experts or consultants to anyone, including E3" and the following provisions will be added to the final protective order:

(f) Counsel for Biothane with whom the Discovering Party has entered into a written Joint Defense Agreement to defend or prosecute in the Nebraska action (including support staff as reasonably necessary), provided that any such individuals have read this Protective Order and signed an Affidavit of Compliance in the form attached as Exhibit A, and submitted to the jurisdiction of the Court in this Action in Cincinnati;

(g) the Nebraska court and its personnel in that action.

18

**Paragraph 13**

The parties do not dispute the substance of Paragraph 13 of the PPO, but merely its placement within the PPO. The Court shall retain this provision as Paragraph 13 of the final protective order with the inclusion of references to 11(f), 11(g), 11(h), 11(i), and 12(f).

**Paragraph 14**

This provision of the PPO requires PEI to supply Katzen with a copy of each signed Affidavit of Compliance of the individuals to whom Katzen's Confidential Materials have been disclosed. PEI seeks to remove this language, contending it requires the disclosure of its trial preparations. Again, the Court determines that this notification is necessary to protect Katzen in the event confidential information is disclosed to a competitor or jeopardizes Katzen's confidential information in some other way. The final protective order will retain Paragraph 14 of the PPO with the inclusion of the provision that "Katzen shall not disclose information regarding the identity of any such Person to anyone, including E3."

**Paragraphs 15 and 16**

These provisions require 14-days notice to Katzen in the event any Person intends to file any document in this Court or in the Nebraska Litigation that includes Confidential Material or to use such material in a hearing, at trial, or during a deposition. Katzen argues this provision is necessary to protect its interests as a non-party to the Nebraska Litigation. PEI argues that the notice requirement is unduly burdensome and that its alternative proposal of filing any Confidential Material under seal protects Katzen's interests.

This Court cannot approve a proposed protective order that permits the filing of documents under seal without a showing of good cause and prior Court approval. *See Procter &*

19

*Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996). The Court finds that the methodology outlined in Paragraphs 15 and 16 of the PPO, with two exceptions, sets forth a workable procedure for notice to Katzen of Confidential Material to be filed or used in court proceedings or depositions. This Court has routinely required similar provisions in protective orders that require notice to opposing parties of the intent to file confidential information that is covered by a protective order. *See, e.g., Graff v. Haverhill North Coke Co.*, No. 1:09-cv-670 (S.D. Ohio Feb. 28, 2011) (Doc. 66 at 5). Nevertheless, the Court determines that a 7-day notice period is better suited to the exigencies of litigation. Therefore, the Court adopts Paragraphs 15 and 16, with a 7-day notice period in lieu of a 14-day notice period.

**Paragraph 17**

Paragraph 17 sets forth a methodology for challenging confidentiality designations. The parties do not dispute the substance of Paragraph 17 of the PPO, but merely its placement within the PPO. The Court shall retain this provision as Paragraph 17 of the final protective order.

**Paragraph 18**

This provision of the PPO governs the obligations of persons receiving Confidential Materials upon the termination of litigation. PEI's proposed changes to Paragraph 18 assume the protective order will permit the sharing of Katzen's Confidential Materials with other entities in cases beyond the Nebraska Litigation. As the Court has determined, use of the Confidential Materials is limited to the Nebraska Litigation. However, the final protective order will add a provision to permit counsel for Biothane, with whom PEI has a joint defense agreement in the Nebraska Litigation, to retain certain documentation for ethical and malpractice liability purposes:

20

Notwithstanding the foregoing, the Discovering Party's outside counsel and Biothane's counsel may retain one copy of any pleadings, written discovery responses, briefs, transcripts, declarations, correspondence, and other materials containing Confidential Material, as well as their work product and any privileged communications related to Confidential Material, but only as may be necessary to comply with ethical requirements, and such Confidential Material shall continue to be subject to this Protective Order.

## Paragraph 19: claw-back of privileged information

Paragraph 19 of the PPO governs the inadvertent or unintentional production of privileged information by Katzen. PEI objects to this provision, arguing the current language provides Katzen the unlimited ability to claim privilege and claw back the information whenever Katzen deems necessary, even on the eve of trial.

The Court determines that Paragraph 19 of the PPO properly sets forth the limitation that Katzen must "promptly" notify the Discovering Party of any such materials inadvertently or unintentionally produced in accordance with the provisions of Fed. R. Evid. 502(b). However, the Court adds the following provision in recognition of Rule 502(b)'s requirement that the holder of the privilege must take reasonable steps to prevent disclosure: "Nothing in this Protective Order shall preclude the Discovering Party returning the inadvertently or unintentionally produced materials from seeking an order compelling the production of information previously produced inadvertently or unintentionally."

## Paragraph 20: claw-back of Confidential Material

Paragraph 20 governs the inadvertent or unintentional production of Confidential Material by Katzen. PEI objects to this provision, arguing that Paragraph 20 gives Katzen an unlimited ability to claim material is Confidential Material, regardless of whether PEI has used or relied on such material, or whether Katzen has notified PEI of its inadvertent or unintentional

21

disclosure within a reasonable time.

The Court agrees that Katzen should promptly notify PEI of any inadvertent or unintentional disclosure of Confidential Material not designated as such, and that any disclosure of such materials by PEI prior to being notified of the inadvertent or unintentional disclosure should not be a violation of the protective order.  The following provisions will be added to Paragraph 20:

> KATZEN shall promptly notify the Discovering Party of the inadvertent or unintentional production" and "Disclosure by the Discovering Party to unauthorized persons before being notified of the inadvertent or unintentional production shall not constitute a violation of this Protective Order.

**Paragraph 21: inadvertent or unintentional disclosure by PEI**

PEI objects to certain provisions of Paragraph 21 of the PPO.  PEI proposes a 15 day time frame within which it is required to notify Katzen of any inadvertent or unintentional disclosure of Confidential Material and a qualification that it will "attempt" to retrieve all copies of the inadvertently or unintentionally disclosed materials and "attempt" to secure the agreement of the recipients to not further use or disseminate those materials.

PEI's proposed revisions are unwarranted.  There is no understandable reason why PEI would need 15 days before notifying Katzen of the inadvertent or unintentional disclosure of its protected materials.  Moreover, the language of the PPO requires PEI to use "every effort" in retrieving the subject information and securing the agreement of the recipients to not further use or disseminate those materials.  This is a more exacting standard than the amorphous "attempting" to retrieve or secure the agreement of others and the duty to use "every effort" is warranted under the circumstances of this case.  The Court shall adopt Paragraph 21 of the PPO.

**Paragraphs 22 and 23**

22

PEI does not take issue with the substance of the paragraphs that govern maintaining the Confidential Material in a safe and secure place and the retention of jurisdiction by the Court for purposes of the enforcement of the protective order.  However, PEI seeks clarification that references to "this Court in Cincinnati" and "This Court" means the "U.S. District Court for the Southern District of Ohio, Western Division" for purposes of implementing and enforcing the protective order.

There is simply no ambiguity as to the identity of the judicial body that retains jurisdiction over the protective order.  Paragraphs 22 and 23 are adopted as written.

**Paragraph 24: joint and several liability of PEI's insurance carrier**

Paragraph 24 states, in relevant part, "Perennial's insurance carrier, Berkley Specialty Underwriting Managers ("Berkley"), shall be responsible jointly and severally with Perennial for any breach of this Order by Perennial or its legal counsel."  PEI does not agree to this provision and states that this provision would require an analysis of insurance coverage issues, among others, and would spawn additional litigation.  Katzen has provided no legal authority compelling the inclusion of such a provision in the absence of an agreement by PEI.  The Court agrees with PEI and eliminates Paragraph 24 from the final protective order.

**Paragraph 25**

This paragraph governs the anticipated use of Confidential Materials at trial or a hearing in the Nebraska litigation and PEI's and Katzen's corresponding responsibilities.  This subject is already covered in Paragraph 16 of the protective order.  Therefore, Paragraph 25 is eliminated from the final protective order.

**Paragraph 26**

Paragraph 26 of the PPO provides:

> If at any time any Confidential Material protected by this Protective Order is subpoenaed or requested in discovery proceedings from the Discovering Party by any Court, administrative or legislative body, or is otherwise requested by any other Person purporting to have authority to require the production of such Confidential Material, the Party or Person to whom the subpoena or other discovery or request is directed shall promptly give written notice thereof to KATZEN with respect to Confidential Material sought, and shall take all reasonable efforts to protect against disclosure of Confidential Information sought by said subpoena, discovery, or other request.

PEI objects to the language requiring "all reasonable efforts to protect against disclosure of Confidential Information sought" as too vague and not clearly defining the obligations of PEI under these circumstances. PEI also construes this language as obligating PEI to seek a protective order on Katzen's behalf, thereby creating a conflict of interest.

Katzen asserts that this provision is designed to protect its confidential information and the modification proposed by PEI would require Katzen to seek relief in a foreign jurisdiction instead of Cincinnati.

The Court notes that PEI does not object to the notice provision contained in Paragraph 26. The Court will therefore adopt this provision. However, the Court believes Katzen and PEI will be better served by defined obligations in the event PEI were to receive a subpoena from any court, administrative agency, legislative body, or any other person not a party to the protective order. The final protective order will include the following provision:

> If at any time any Confidential Material protected by this Protective Order is subpoenaed or requested in discovery proceedings from the Discovering Party by any Court, administrative or legislative body, or is otherwise requested by any other Person purporting to have authority to require the production of such Confidential Material (such subpoena or discovery request collectively referred to as a "Third Party Request"), the Party or Person to whom the subpoena or other discovery or

request is directed will (1) not produce such information without first giving prompt written notice (including a copy of the Third Party Request) to Katzen, no more than three business days after receiving the Third Party Request; (2) promptly inform in writing the party who caused the Third Party Request to issue in the other litigation that some or all the material covered by the Third Party Request is subject to this Protective Order; and (3) promptly deliver a copy of this Protective Order to the party in the other action that caused the Third Party Request to issue.

A final protective order incorporating the above decisions shall be issued forthwith by the Court.

B. Witness Fees

The other issue before the Court is whether Mr. Madson, Katzen's President, is entitled to any remuneration beyond the Fed. R. Civ. P. 45 witness fees and mileage costs for the time he will spend preparing for and testifying at his deposition.[4] Rule 45 of the Federal Rules of Civil Procedure governs subpoenas and provides that the party issuing a subpoena requiring an individual's attendance must pay "the fees for 1 day's attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b)(1).[5] PEI has paid the attendance fee and mileage as required, but Katzen asserts that Mr. Madson is entitled to further compensation, including an hourly fee of $450.00, given the "ongoing discovery burden" associated with preparing for this deposition. (Doc. 40 at 11). Specifically, Katzen argues that PEI's subpoena is overly broad and unduly burdensome as it identifies 48 wide-ranging topics of deposition testimony. Katzen asserts that these topics, such as "[c]orrespondence between Katzen and E3 from 2005 through the present date[,]" (Doc. 35, Ex. 1 at 4), are nebulous and that requiring Mr. Madson to become informed about such a vast subject would unjustly shift the burden of PEI's discovery costs in the

---

[4] Pursuant to the June 21, 2013 subpoenas issued by PEI, the deposition of Katzen's Fed. R. Civ. P. 30(b)(6) witness is scheduled to proceed on August 28, 2013, and Mr. Madson's deposition will proceed on August 29, 2013, both in Cincinnati, Ohio. (Doc. 34, Ex. 1, 2). However, during the July 3, 2013 status conference, the parties informed the undersigned that Katzen intends to present Mr. Madson in response to the Rule 30(b)(6) witness subpoena on August 14, 2013.

[5] The per diem and mileage fees are governed by 28 U.S.C. § 1821; the daily fee for a witness is $40.00. 28 U.S.C. § 1821(b).

Nebraska Litigation onto Katzen, a non-party.  Katzen also notes that many of the topics

identified in the subpoena, including claims made by and the bankruptcy of E3, are simply

beyond the scope of Mr. Madson's knowledge and, therefore, are overbroad.  Given the extensive

topics identified in PEI's subpoena, Katzen requests that this Court enter an order: (1)

compelling PEI to pay Mr. Madson a $450 hourly fee for the time he will spend preparing for and

providing testimony at his deposition, and (2) order PEI to modify the subpoena and identify

reasonably specific topics.

      PEI contests Katzen's fee requests, asserting that Mr. Madson – a fact witness – is

entitled to only those fees required under Rule 45.  (Doc. 39 at 11).  PEI notes that Rule 45 does

not permit the Court to order the payment of witness fees in excess of what is required under 28

U.S.C. § 1821.  Further, PEI asserts that there is no undue burden on Mr. Madson given that he is

intimately familiar with the subject matter of the Nebraska Litigation as he provided two expert

reports in related litigation about the cause of the 2007 boiler explosion.  (Doc. 39 at 12, Exs. 4,

5).

      The undersigned notes that Katzen has not provided any authority supporting its request

that Mr. Madson be paid the requested $450 hourly witness fee.  Rather, Katzen cites generally to

three cases wherein courts in this District determined that sanctions were appropriate under Rule

45: (1) *Georgia-Pacific LLC v. American Int'l Specialty Lines Ins. Co.*,  278 F.R.D. 187 (S.D.

Ohio 2010); (2) *In re: Vitamins Antitrust Litig.*, 267 F. Supp.2d 738 (S.D. Ohio 2003); and (3)

*Vietnam Vets. of Am. v. CIA*, No. 2:11-mc-16, 2011 WL 4714000 (S.D. Ohio Oct. 6, 2011).  The

undersigned finds that these cases are inapposite and fail to support Katzen's requested fees.  The

*Georgia-Pacific* matter involved a subpoena issued by the defendant requesting medical records

and other proof of personal injury from unrepresented class action members. *Georgia-Pacific*, 278 F.R.D. at 189. The non-parties moved for protective orders, reviewed the requested discovery, including making a privilege log and preparing for and defending a deposition, and requested attorney's fees under Rule 45(c)(1) for their time and expenses. *Id.* The Court determined that the non-parties were entitled to reimbursement of their legal fees given the extensive time counsel spent reviewing over ten bankers' boxes of documents as well as other electronically stored information. *Id.* at 190-91. While *Georgia-Pacific* supports a finding that counsel for Katzen may be entitled to recover attorney's fees by demonstrating that PEI's subpoena imposed an undue burden on them, there is nothing in this case which supports a holding that a fact witness is entitled under Rule 45 to the type of fees Katzen is requesting for Mr. Madson's deposition testimony. Similarly, *In re Vitamins* involved a non-party's motion to quash a Rule 45 subpoena for undue burden and to protect trade secrets. *In re Vitamins*, 267 F. Supp.2d at 739-40. The Court granted the non-party's motion to quash noting that there was no protective order which it would be able to enforce should the non-party's trade secrets be compromised and determined that the best course of action was to not *presently* enforce the subpoena. *Id.* at 741-42. This ruling was based wholly on the Court's interest in protecting the non-parties' trade secrets in the absence of a protective order and made no determination as to the burden imposed by the subpoena. Lastly, the *Vietnam Vets* matter cited by Katzen involved a non-party's motion to quash or modify deposition subpoenas under Rule 45 claiming that the topics included in the subpoena were vague and irrelevant. 2011 WL 4714000, at *3-4. The Court agreed and modified the two parts of the subpoena: the first which sought irrelevant information and the second which sought information that could be obtained through written

discovery, which was less burdensome to the non-party. *Id.* at *5. Again, nothing in the *Vietnam Vets* matter – or any case cited by Katzen – supports their request for witness fees above those provided by Rule 45 and 28 U.S.C. § 1821.

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(c)(1). The Advisory Committee Notes to Rule 45(c) clarify that the Rule is intended to create "liability for *earnings lost* by a non-party witness as a result of a *misuse* of the subpoena." Fed. R. Civ. P. 45, 1991 Adv. Comm. Note (emphasis added).

Given the unambiguous language of the Rule, the undersigned finds that Mr. Madson is not entitled to a $450 hourly witness fee for the time he will spend preparing for and testifying at his deposition. Nor is PEI subject to sanctions under Rule 45 given the facts currently before the Court. Notably, Rule 45(c)(1) only permits the Court to sanction PEI if it has failed to take reasonable steps to avoid imposing an undue burden or expense on Mr. Madson. Fed. R. Civ. P. 45(c)(1). While Katzen contends that the deposition topics identified by PEI in its subpoena are overbroad and burdensome as Mr. Madson will be required to expend significant time in preparing for his deposition, the undersigned is not persuaded by this argument. First, the record reflects that Mr. Madson provided expert opinion reports in 2011 and 2012 on the cause of the 2007 boiler explosion and functionality of the Nebraska ethanol plant that is the subject of the underlying Nebraska Litigation and many of the deposition topics identified by PEI. (Doc. 39, Exs. 4, 5). Considering Mr. Madson's existing knowledge of the Nebraska plant as evidenced by these reports, the undersigned is not convinced that he will be required to engage in unduly

28

burdensome preparation prior to his deposition.  To the extent that PEI's subpoena includes topics about which Mr. Madson has no knowledge, *e.g.*, E3's claims in the Nebraska Litigation or E3's discovery responses (Doc. 34, Ex. 1), he is not required to obtain this outside knowledge prior to testifying in this matter.  Rather, as Katzen has identified Mr. Madson as its Rule 30(b)(6) witness, all that is required is that he "testify about information known or reasonably available" to Katzen.  Fed. R. Civ. P. 30(b)(6).

The undersigned recognizes that Katzen, as a non-party, should not be required to subsidize PEI's litigation costs and that Rule 45's cost-shifting mechanism serves the purpose of deterring parties "from engaging in fishing expeditions." *Linder v. Calero-Portocarrero*, 183 F.R.D. 314, 322 (D.D.C. 1998).  "However, 'protection from significant expense' does not mean that the requesting party necessarily must bear the *entire* cost of compliance" especially where it is not clear that the nonparty has no interest in the litigation. *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992).  Here, it is not entirely clear that Katzen is a disinterested nonparty given its involvement in planning portions of the ethanol plant which is the subject of the Nebraska Litigation.  However, this issue is not currently before the Court.  The instant determination is limited to the witness fees owed Mr. Madson prior to his deposition. *See* Doc. 38 at 3.  As there is no authority or precedent for ordering PEI to pay Mr. Madson a $450 hourly witness fee, Katzen's request is **DENIED**.

**IT IS SO ORDERED.**

Date: 7/18/13

Karen L. Litkovitz
United States Magistrate Judge